

**ADWANTED USA, INC**
25 West 39th Street, 14th floor
New York, NY 10009

January 26, 2018

<u>**PRIVATE & CONFIDENTIAL**</u>

Mr. Joe Lagani
482 Woodlands Road
Harrison, NY 10528

Dear Joe,

 We are extremely pleased to provide you with this offer of employment with Adwanted USA, Inc. (the "**Company**").

 1.    **Title, Responsibilities**.  Your title will be President, Sales and Business Development, which encompasses the job duties attached hereto in <u>Exhibit A</u>. You shall report to the Company's Chief Executive Officer ("**CEO**") (in the current absence of a Company CEO, you will report temporarily to Mr. Emmanuel Debuyck, Adwanted Group SAS Chief Executive Officer). This is a full-time position. While you render services to the Company, you will not engage in any other employment (whether full-time or part-time) and you will not engage in any other consulting or other business activity that would create a conflict of interest with the Company. By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

 2.    **Employment**.  Your employment with the Company shall commence no later than April 2nd, 2018 (the "**Effective Date**"), or such other date to be mutually agreed upon. Your employment with the Company will be "at will". Accordingly, the Company may terminate the employment relationship, with or without Cause (as hereinafter defined), upon two weeks' prior written notice. Any contrary representations that may have been made to you are superseded by this letter agreement. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company. For purposes of this letter agreement, "<u>Cause</u>" shall mean: (A) conviction of, or the entry of a plea of guilty or no contest to, a felony or any other crime that causes the Company or its Affiliates public disgrace or disrepute, or materially and adversely affects the Company's or its Affiliates' operations or financial performance or the relationship the Company has with its customers, (B) gross negligence or willful misconduct with respect to the Company or any of its Affiliates, including, without limitation fraud, embezzlement, theft or proven dishonesty in the course of his or her employment; (C) refusal to perform any lawful, material obligation or fulfill any duty (other than any duty or obligation of the type described in clause (E) below) to the Company or its Affiliates (other than due to a disability), which refusal is not cured within fifteen (15) days after delivery of written notice thereof; (D) material breach of any agreement with or duty owed to the Company or any of its Affiliates, which breach is not cured within fifteen (15) days after the delivery of written notice thereof; or (E) any breach of any obligation or duty to the Company or any of its Affiliates (whether arising by statute, common law or agreement) relating to confidentiality, non-



competition, non-solicitation or proprietary rights, which breach is not cured within fifteen (15) days after the delivery of written notice thereof.

3.    **Base Salary.** As of the Effective Date until June 30, 2018, your base monthly salary shall be $2,000. From July 1, 2018 until September 30, 2018, your base monthly salary shall be $8,000. From October 1, 2018 and thereafter, the Company will pay you a base salary equal to $200,000 per year or $16,667 per month (the "**Base Salary**"), less applicable withholding for taxes and payable in accordance with the Company's current payroll practices.

4.    **Sales Incentive.** In addition to your Base Salary, you will be entitled to a performance-based sales bonus equal to three percent (3%) of Net Revenue that is generated by your own sales performance for calendar years 2018, 2019 and 2020 (the "**Commission**"). The Commission shall apply to the Net Revenue booked in the applicable calendar year. The Commission will be paid by March 1st of the following calendar year subject to the Net Revenue payments being received by the Company by such date. For purposes of this Agreement, "**Net Revenue**" is defined as the sales commissions on media that are actually collected by the Company from its clients. The commission is earned over a 12-month rolling period in case your contract has been terminated during the course of the calendar year.

5.    **Severance.** If the Company terminates your employment agreement without Cause, then the Company shall pay you a severance in an amount equal to three (3) months of your then-applicable Base Salary being paid to you and no less than $50,000 (the "**Severance Amount**"); provided that, the receipt of the Severance Amount shall be contingent on you signing a separation and release agreement in a form satisfactory to the Company.

6.    **Proprietary Information and Inventions Agreement**. Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Non-Disclosure, Non-Competition and Invention Assignment Agreement, a copy of which is attached hereto as Exhibit B.

7.    **Office Location.** You will work out of the Company's offices in New York, N.Y., subject to necessary travel requirements to future Company locations and clients' locations to carry out your duties and responsibilities.

8.    **Vacation; Benefit Plans.** The Company operates a policy of unlimited vacation. During the Term, you and your dependents shall be eligible to participate in and receive all health benefits under any welfare benefit plans and programs and business travel insurance plans that the Company is planning to provide to its executive officers.

9.    **Restricted Stock Grant.** As additional compensation for your service to the Company, you shall receive a one-time award of 125,889 shares of restricted common stock, $0.00001 par value per share, of the Company (the "**Restricted Stock**"). The Restricted Stock shall be issued to you and vest pursuant to the terms of the Restricted Stock Purchase Agreement, attached hereto as Exhibit C.

10.   **Tax Matters.**

    a.    **Withholding.**  All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law.

    b.    **Tax Advice.**  You are encouraged to obtain your own tax advice regarding your compensation from the Company.  You agree that the Company does not have a duty to design its



compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board of Directors related to tax liabilities arising from your compensation.

11.    **Interpretation, Amendment and Enforcement.**  This letter agreement, Exhibit A, Exhibit B and Exhibit C constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company with respect to your employment.  This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company.  This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the state of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof.  Any controversy, dispute or claim arising out of or relating, in any manner, to your tenure with the Company, including any related to or arising from the services you provide to the Company or your employment, shall first be settled through good faith negotiation. If the dispute cannot be settled through negotiation, the parties agree to arbitration under New York law, and the parties further agree that such arbitration shall be administered by Judicial Arbitration & Mediation Services ("**JAMS**") pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Judgment on the award may be entered in any court having jurisdiction. The arbitrator may grant injunctions or other relief and, to the extent the JAMS rules conflict with New York law, New York law shall take precedence. You consent to using any Expedited Procedures offered by JAMS.

12.    **Entire Agreement.**  This agreement and the documents referenced herein represent the entire agreement between you and the Company.  You further represent and warrant that you are not subject to any agreement, order or judgment of any kind, or any other restrictive agreement of any character, which would prevent you from entering this letter agreement or which would be breached by entering, or performance of your duties pursuant to, this letter agreement. This offer is contingent upon the acceptable completion of a standard credit and criminal background screening.

13.    **Applicable Law.**  This agreement shall be governed by, enforced under, and construed in accordance with the laws of the State of New York.

*[remainder of page intentionally left blank]*

Joe, we are looking forward to you joining us and we hope that you are keen to accept this offer. As required by law, your employment with the Company is contingent upon your providing legal proof of your identity and authorization to work in the United States.

Yours sincerely,

Andre Coste, Director
**ADWANTED USA, Inc.**

Accepted and Agreed:

Joe Lagani

Address: 482 WOODLANDS Road

HARRISON, N.Y.

Attachments:

- Exhibit A: Description of Duties
- Exhibit B: Employee Non-Disclosure, Non-Competition and Invention Assignment Agreement
- Exhibit C: Restricted Stock Purchase Agreement

## EXHIBIT A

### Description of Duties
### President, Sales and Business Development
### Adwanted USA, Inc.

**Job Purpose**

The President, Sales and Business Development will (1) identify and engage target customers, (2) manage the sales process from the first meetings to contract and develop/manage a business development team to support US sales, working closely with the Company's CEO and Advisors.

**Primary Duties and Responsibilities**

Our Business Development Director will be responsible for the following actions, in cooperation with the CEO:

- Primarily, engaging senior decision-makers at leading media operators, ad media buying agencies in the USA and Canada.
- Coordinating these relationships with the CEO and the rest of the Adwanted US team;
- Planning and preparing presentations and platform demos;
- Negotiating commercial terms and sign off on all deals;
- Setting commercial milestones, including targets and revenues, in cooperation with the CEO; agreeing on a yearly sales budget and on a quarterly forecast update with the CEO;
- Supporting customer service delivery and problem solving;
- Promoting Adwanted to industry opinion leaders via industry events, professional associations and social media.
- Communicating new product developments to target customers;
- Providing management and Adwanted developers with regular feedback and contributing to the Adwanted CRM system daily.
- Managing the US Sales and Business Development team as it grows, provide coaching and leadership to ensure the success of the team and the development of everyone, set individual and collective targets (after review with the CEO);
- Reporting actions taken, issues faced, solutions and successes on a weekly basis to the CEO.
- Presenting and explaining to the CEO the sales results in comparison to budget and forecast as well as actions taken.



**EXHIBIT B**

**Employee Non-Disclosure, Non-Competition and Invention Assignment Agreement**

I, Joe Lagani, am about to become an employee of Adwanted USA, Inc., a Delaware Company (the "Company"). I am making this Agreement in consideration of my employment with the Company. This agreement applies to the entire period of my employment.

1.      **Representations and Warranties; Covenants.**

        1.1.    **No Conflict with any Other Agreement or Obligation.** I represent and warrant that I am not bound by any agreement or arrangement with or duty to any other person that would conflict with this agreement. Except for any obligation described on Exhibit B.1 attached to this agreement, I do not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that I learned of during any previous engagement, employment or association nor have I had any obligation to assign contributions or inventions of any kind to any other person. I shall not disclose to the Company or induce the Company to use any proprietary, trade secret or confidential information or material belonging to others.

        1.2.    **No Infringement of Third Party Intellectual Property Rights.** I represent and warrant that the Inventions (as defined in Section 3 below) will not infringe any patent, copyright, trade secret or other proprietary right of any third party.

        1.3.    **Open Source.** I represent and warrant that the Inventions will not include any open source software, except with the prior written consent of the Company. If open source software is included in the Inventions, I agree to maintain for the Company a regularly updated record of all such open source software.

2.      **Confidential Information.**

        2.1.    **Definition of Confidential Information.** "Confidential Information" means all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that the Company is obligated to treat as confidential or proprietary, and any other technical, operating, financial and other business information that has commercial value, relating to the Company, its business, potential business, operations or finances, or the business of the Company's affiliates or customers, of which I may have acquired or developed knowledge or of which I may in the future acquire or develop knowledge of during my work for the Company, or from my colleagues while working for the Company.

        2.2.    **Protection of Confidential Information.** I will use the Confidential Information only in the performance of my duties for the Company. I will not disclose the Confidential Information, directly or indirectly, at any time during or after my employment with the Company except to persons authorized by the Company to receive this information. I will not use the Confidential Information, directly or indirectly, at any time during or after my employment with the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company. I will take all action reasonably necessary to protect the Confidential Information from being disclosed to anyone other than persons authorized by the Company.

**2.3.   Return of Confidential Information.**   When my employment with the Company terminates, I will immediately return or destroy all materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium) containing, summarizing, abstracting or in any way relating to the Confidential Information. At the time I return these materials I will acknowledge to the Company, in writing and under oath, in the form attached as <u>Exhibit B.3</u>, that I have complied with the terms of this agreement.

**3.   Inventions.**

**3.1.   Definition of Inventions.** The term "**Inventions**" means:

(a)   contributions and inventions, discoveries, creations, developments, improvements, works of authorship and ideas (whether or not they are patentable or copyrightable) of any kind that are **<or were, since the date of commencement of my employment with the Company,>** conceived, created, developed or reduced to practice by me, alone or with others, while employed by the Company that are either: (i) conceived during regular working hours or at my place of work, whether located at Company, affiliate or customer facilities, or at my own facilities; or (ii) regardless of whether they are conceived or made during regular working hours or at my place of work, are directly or indirectly related to the Company's business or potential business, result from tasks assigned to me by the Company, or are conceived or made with the use of the Company's resources, facilities or materials; and

(b)   any and all patents, patent applications, copyrights, trade secrets, trademarks, domain names and other intellectual property rights, worldwide, with respect to any of the foregoing.

(c)   The term "Inventions" specifically excludes any inventions I developed entirely on my own time without using any Company equipment, supplies, facilities or trade secret information, unless (i) the invention related at the time of conception or reduction to practice of the invention to (A) the Company's business, or (B) the Company's actual or demonstrably anticipated research or development, or (ii) the invention results from any work performed by me for the Company.

**3.2.   All Inventions are Exclusively the Property of the Company.**

(a)   I will promptly disclose all Inventions, in full detail, to persons authorized by the Company. I will not disclose any Invention to anyone other than persons authorized by the Company, without the Company's express prior written instruction to do so.

(b)   All Inventions will be deemed "work made for hire" as that term is used in the U.S. Copyright Act and belong solely to the Company from conception. I hereby expressly disclaim all interest in all Inventions. To the extent that title to any Invention or any materials comprising or including any Invention is found not to be a "work made for hire" as a matter of law, I hereby irrevocably assign to the Company all of my right, title and interest to that Invention. At any time during or after my employment with the Company that the Company requests, I will sign whatever written documents of assignment are necessary to formally evidence my irrevocable assignment to the Company of any Invention.

(c)   At all times during or after my employment with the Company I will assist the Company in obtaining, maintaining and renewing patent, copyright, trademark and other appropriate protection for any Invention, in the United States and in any other country, at the Company's expense.

3.3. **Excluded Information**. On <u>Exhibit B.2</u> attached to this agreement I have included a complete list, with non-confidential descriptions, of any inventions, ideas, reports and other creative works that I made or conceived prior to my employment with the Company (collectively, the **"Excluded Information"**). I intend that the items on that list and only the items on that list shall be excluded from the restrictions set forth in this agreement. I will not assert any right, title or interest in or to any Invention or claim that I made, conceived or acquired any Invention before my employment with the Company unless I have specifically identified that Invention on the attached <u>Exhibit B.2</u>. In the event that any Excluded Information is incorporated into any Invention, I hereby grant Company a perpetual, worldwide, royalty free, non-exclusive license to use and reproduce the Excluded Information for commercial, internal business and all other purposes.

4.     **Non-Solicitation; Non-Compete**.  In order to protect the legitimate business interests of the Company and in consideration of the Company's willingness to provide to me access to its Confidential Information, I agree that during the period beginning on the initial date of my employment with the Company and ending one (1) year after termination of my employment with the Company for any reason, I will not directly or indirectly, whether as owner, sole proprietor, partner, shareholder, director, member, consultant, agent, founder, co-venture partner or otherwise, (i) do anything to divert or attempt to divert from the Company any business of any kind, including, without limitation, solicit or interfere with any of the Company's customers, clients, members, business partners or suppliers, (ii) solicit, induce, recruit or encourage any person engaged or employed by the Company to terminate his or her employment or engagement, or (iii) engage, invest or participate in any business that competes directly with those which the Company has created, has under development or are the subject of active planning from time to time during my employment with the Company, provided, however, that I may own, as a passive investor, publicly-traded securities of any Company that competes with the business of the Company so long as such securities do not, in the aggregate, constitute more than three percent (3%) of any class of outstanding securities of such Company.

5.     **Mutual Non-Disparagement**. During my employment with the Company, and thereafter, (i) I shall not, directly or indirectly, make or publish any disparaging statements (whether written or oral) regarding the Company or any of its affiliated companies or businesses, or the affiliates, directors, officers, agents, principal stockholders or customers of any of them and (ii) neither the Company nor any of its affiliated companies or businesses or their affiliates, directors, or officers shall directly or indirectly, make or publish any disparaging statements (whether written or oral) regarding the Executive.

6.     **Miscellaneous**.

6.1.     **Interpretation and Scope of this Agreement**.  Each provision of this agreement shall be interpreted on its own. If any provision is held to be unenforceable as written, it shall be enforced to the fullest extent permitted under applicable law. In the event that one or more of the provisions contained in this agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, then it shall (a) be enforced to the fullest extent permitted under applicable law and (b) such unenforceability shall not affect any other provision of this agreement, but this agreement shall then be construed as if such unenforceable portion(s) had never been contained herein.

6.2.     **Remedies**.  I understand and agree that if I breach or threaten to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm and that monetary damages would be an inadequate remedy. I agree that, in the event of my breach or threatened breach of any of the provisions of this agreement, the Company shall have the right to seek relief from a court to restrain me (on a temporary, preliminary and permanent basis) from using or disclosing Company Confidential Information or Inventions or otherwise violating the provisions of this agreement, and that



any such restraint shall be in addition to (and not instead of) any and all other remedies to which the Company shall be entitled, including money damages. The Company shall not be required to post a bond to secure against an imprudently granted injunction (whether temporary, preliminary or permanent).

6.3.    **Governing Law; Jury Waiver; Consent to Jurisdiction.**  This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly here from shall be governed by and construed and enforced in accordance with the internal laws of the state of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof. For all matters arising directly or indirectly from this agreement ("**Agreement Matters**"), I hereby (a) irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the state of New York that is located in the county of New York (and of the appropriate appellate courts from any of the foregoing) in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding ("**Proceeding**") directly or indirectly arising out of or relating to any Agreement Matter; provided that a party to this agreement shall be entitled to enforce an order or judgment of any such court in any United States or foreign court having jurisdiction over the other party, (b) irrevocably waive, to the fullest extent permitted by law, any objection that I may now or later have to the laying of the venue of any such Proceeding in any such court or that any such Proceeding which is brought in any such court has been brought in an inconvenient forum, (c) irrevocably waive, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (d) irrevocably waive, to the fullest extent permitted by law, any right to a trial by jury in connection with a Proceeding, (e) covenant that I will not, directly or indirectly, commence any Proceeding other than in such courts and (f) agree that service of any summons, complaint, notice or other process relating to such Proceeding may be effected in the manner provided for the giving of notice as set forth in this agreement.

6.4.    **Entire Agreement; Amendments and Waivers.**  This agreement (including the exhibits attached hereto) represents the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and can be amended, supplemented, or changed and any provision hereof can be waived, only by written instrument signed by the party against whom enforcement of any such amendment, supplement, change or waiver is sought.

6.5.    **Captions.**  The captions and section headings in this agreement are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this agreement.

6.6.    **Counterparts; Binding Effect.**  This agreement may be executed in counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same agreement. Except as otherwise expressly provided herein, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

6.7.    **Notices.**  All notices and other communications given or made pursuant to this agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications to me shall be sent to the respective parties at their address as set forth on the signature page of this agreement, or in the Company's records, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section and all notices to the Company shall be provided to the Company's headquarters, attention CEO.



By signing this agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this agreement and understand its terms including that it places significant restrictions on me.

EMPLOYEE:

By: _____

Name: Joe Lahani

Address: _____482 WOODLAWS Rd_____

_____HARRISON , N. Y._____

Date: _____1/26/18_____

Accepted by Company:

Adwanted USA, Inc.

By: _____

Name: _____COSTE Andre_____

Title: _____DIRECTOR_____

Date: _____1/26/2018_____

## EXHIBIT B.1

**Obligations to Other Persons:**
<Securely attach additional pages if necessary>

_____

_____

_____:_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*<If this exhibit is left blank, the employee shall be deemed to represent that he/she does not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that he/she learned of during any previous engagement, employment or association nor has he/she had any obligation to assign contributions or inventions of any kind to any other person.>*



## EXHIBIT B.2

**Excluded Information:**
<Securely attach additional pages if necessary>

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*<If this exhibit is left blank, the employee shall be deemed to represent that he/she does not have any Excluded Information.>*

<u>EXHIBIT B.3</u>

<u>Form of Acknowledgment</u>

My employment by Adwanted USA, Inc. (the "Company") is now terminated. I have reviewed my Non-Disclosure and Invention Assignment Agreement with the Company, dated _____ ___, 201_ (the "Agreement"), and I swear, under oath, that:

- I have complied and will continue to comply with all of the provisions of the Agreement.

- I understand that all of the Company's materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium), whether or not they contain Confidential Information (as that phrase is defined in the Agreement), are and remain the property of the Company. I have delivered to authorized Company personnel, or have destroyed, all of those documents and all other Company materials in my possession.

_____

Signature

_____

Name (please print clearly)

_____

_____

Address

STATE OF _____     )
                             ) ss.:
COUNTY OF _____       )

BE IT REMEMBERED, that on this _____ day of _____, _____, before me, the subscriber, a notary public of the State of _____, personally appeared _____, who being by me duly sworn on his oath, deposed and made proof to my satisfaction that (s)he is the person named in the within instrument, to whom I first made known the contents thereof, and thereupon (s)he acknowledged that (s)he signed, sealed and delivered the same as his/her voluntary act and deed for the uses and purposes therein expressed.

<SEAL>

_____

Notary Public

# EXHIBIT C

## Restricted Stock Purchase Agreement